S. Rhiannon **HAYES**

v.

**HENRI BENDEL, INC. and Anthony Gulla.**

Civil Action No. 96–10526–RGS.

United States District Court,
D. Massachusetts.

Oct. 18, 1996.

Michael W. Sobol, Shafner, Gilleran & Mortensen, PC, Boston, MA, for S. Rhiannon Hayes.

Douglas L. Williams, Christina Landolfi, Vorys, Sater, Seymour and Pease, Columbus, OH, for Henri Benel, Inc.

Kenneth M. Bello, Anne Kinnane, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, Barbara J. Macy, Boston, MA, for Anthony Gulla.

*MEMORANDUM AND ORDER OF DECI-
SION ON DEFENDANT GULLA'S
MOTION TO DISMISS AND DEFEN-
DANT BENDEL'S MOTION FOR
SUMMARY JUDGMENT*

STEARNS, District Judge.

Plaintiff Rhiannon Hayes claims that a co-worker, the defendant Anthony Gulla, harassed her sexually while the two were employed at defendant Henri Bendel, Inc. ("Bendel"). Hayes asserts that Gulla's acts, and Bendel's failure to control Gulla's behavior, caused her emotional distress and, ultimately, the loss of her job. Hayes filed charges of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") detailing Gulla's behavior, and naming Bendel as the respondent. Upon receiving a Right to Sue Letter from the EEOC, Hayes filed this action.[1] Hayes's Complaint against Bendel and Gulla asserts the following claims: Count I—Violation of Title VII (Bendel); Count II—Violation of M.G.L. c. 151B (Bendel); Count III—Violation of M.G.L. c. 151B (Gulla); Count IV—Intentional or Negligent Infliction of Emotional Distress (Gulla); Count V—Negligent Hiring, Supervision or Reten-

tion (Bendel for employment of Gulla); Count VI—Negligent Hiring, Supervision or Retention (Bendel for employment of Paul Seneca[2] and Jodi Catino); Count VII—Negligent Infliction of Emotional Distress (Bendel); and Count VIII—Constructive Discharge (Bendel).

Bendel seeks summary judgment on each of Hayes's claims in which it is named. Bendel maintains that it responded promptly when Hayes finally made allegations of sexual harassment against Gulla and that Hayes's tort claims are barred by the Massachusetts Workers' Compensation Act. Gulla has filed a motion to dismiss. Gulla argues that Hayes's failure to name him as a respondent in her complaint to the MCAD precludes her from naming him in a Chapter 151B action. Gulla also argues that Hayes has failed to plead conduct legally sufficient to support an action for intentional infliction of emotional distress. Gulla joins Bendel in the contention that any claim for negligent infliction of emotional distress is barred by the Workers' Compensation Act.[3]

*FACTS*

The facts, viewed in the light most favorable to the plaintiff, are these. In the fall of 1993, Hayes was employed by Bendel working as a product manager for Chanel cosmetics. Gulla was a free-lance make-up artist under contract to Chanel, but working under Hayes's supervision. Hayes complained to Chanel about the quality of Gulla's work. In October, 1993, Gulla left Chanel and began working directly for Bendel. As a Bendel employee, Gulla was no longer supervised by Hayes.

---

1. The EEOC notified Hayes that the state filing had been referred by the MCAD under the agencies' worksharing agreement.

2. Senecal was the store's managing director. He left Bendel in the winter of 1994 and is not named as a party. It is not altogether clear what his role was in the events underlying this litigation. Hayes states that Lorraine Fish, one of her supervisors, told her "off the record" that Senecal was unlikely to intervene on her behalf because he was friendly with Gulla. There is no evidence that any of Hayes's complaints were ever communicated, at least directly, to Senecal.

3. At the hearing on defendants' motions to dismiss and for summary judgment, Hayes agreed that Counts V–VII of the Complaint are barred by the exclusivity provisions of the Massachusetts Worker's Compensation Act, as is so much of Count IV as alleges negligent infliction of emotional distress on the part of Gulla. She also agreed that Count VIII, which premises a common law constructive discharge claim on allegations of a hostile work environment, is pre-empted by the statutory remedy contained in Chapter 151B. See *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 586, 631 N.E.2d 555 (1994).

Hayes alleges that Gulla commenced a "campaign of harassment," against her, intercepting and steering away potential customers, (perhaps) crediting Hayes's sales to other employee's accounts, and disconnecting Hayes's telephone calls. Complaint, ¶¶ 10, 12; Hayes First Aff., at ¶ 4. Gulla also made disparaging comments about Hayes's weight and the size of her breasts.[4] In the late fall of 1993, Hayes complained to Jodi Catino, the manager of the cosmetics department, that Gulla was stealing her sales and destroying her sales records. Complaint, ¶ 11; Hayes Deposition, at 38–39, 42–44. Hayes did not inform Catino of Gulla's sexually derogatory remarks. Hayes Deposition, at 39–41. Gulla thereafter accused Hayes and another co-worker, Jeannette Hanlon, of refusing to assist him with a sale. Complaint, ¶ 14. Hayes met in January of 1994 with Catino and Bendel's Operations Manager, Susie Nystrom, to discuss Gulla's allegation. Hayes denied Gulla's accusation and repeated her complaint that he was appropriating her sales and treating her in a derisory manner. Hayes did not mention that Gulla had made offensive remarks about her breasts and weight. Hayes Deposition, at 66–69. Bendel issued disciplinary letters to Hayes, Gulla, and Hanlon warning that any further inappropriate conduct would be punished. Id., at 66, 72–73.

In the spring of 1994, Catino informed her replacement, Lorraine Fish, of the animosity between Gulla and Hayes. That summer, Hayes came to Fish on several occasions to complain that "Mr. Gulla had either called her something offensive, disconnected phone calls that were for her, or bad mouthed her to the rest of the department." Fish Aff., at ¶ 8. On October 15, 1994, Hayes told Fish that Gulla had purposely bumped into her in the back hallway of the store and had called her a "cunt." Fish Aff., at ¶ 20.[5] Fish asked Hayes to put her complaint in writing. Complaint, ¶ 16. Hayes did so the following day. Complaint, ¶ 17. On October 17, 1994, Assistant Managing Director Yvette Yelardy faxed Hayes's statement to Bendel's Vice President for Human Resources, Pegeen Rubinstein, in New York City. Rubinstein Aff., at ¶ 2. Rubinstein traveled to Boston on October 22, 1994, to investigate. Id. Given the nature of the accusation, Rubinstein immediately suspended Gulla and told Hayes that she could take a week's leave with pay. Id. Hayes did so. Id.

After interviewing Hayes and Gulla, and other Bendel employees, Rubinstein concluded that both Hayes and Gulla were at fault. Rubinstein Aff., at ¶¶ 5, 8. Rubinstein believed, however, that Gulla's actions were the more reprehensible. Consequently, she terminated Gulla for violations of company policy on November 1, 1994. Id., at ¶¶ 8–9.[6] Rubinstein informed Hayes of her decision and asked Hayes to return to work. Id., at ¶ 9. Hayes declined, stating that she was psychologically disabled. Bendel granted Hayes's unofficial request for leave, paying her medical bills and keeping her on the payroll for benefits' purposes.[7] Id., at ¶ 11.

---

4. Specifically Gulla told Hayes that her breasts "are so big that they scare me.... and that after age 25, a woman cannot even walk into a bra because everything is sagging." Gulla also referred to Hayes at times as a "bitch." Complaint, ¶ 13; Hayes First Aff., at ¶ 6.

5. In her deposition, Hayes stated that this was the first occasion on which she complained to one of her supervisors that Gulla had addressed her with this term and other sexually explicit language. Hayes Deposition, at 39–41, 68, 94. In an affidavit filed nine days before the hearing, Hayes states that she had complained to Lorraine Fish during the summer of 1994 that Gulla had called her a "cunt". "When an interested witness has given clear answers to unambiguous questions, [s]he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 5 (1st Cir.1994). In a second affidavit filed two days before the hearing, Hayes conceded that her deposition testimony was "unclear," a circumstance that she blames on the fact that she was answering questions posed by Bendel's attorney.

6. Bendel has a written policy against sexual harassment. The policy statement is distributed to each employee. Employees are given a confidential number to call with complaints. A copy of the policy is appended to the affidavit of Pegeen Rubinstein as Exhibit D.

7. Hayes never provided documentation to Bendel of her need for disability leave. Id.

In February of 1995, Hayes applied for unemployment compensation. Hayes Deposition, at 112. Bendel sent a letter to Hayes expressing surprise at her application since she was still on Bendel's payroll and claiming disability. Maese Aff., at ¶ 2. Bendel told Hayes that she was welcome to return to work, but that if she did not do so by March 15, 1995, Bendel would assume that she had resigned. Hayes did not respond. Bendel ended her payroll status on March 25, 1995. Id., at ¶ 4.

On March 30, 1995, Hayes filed a charge of discrimination with the MCAD, naming Bendel as the respondent. On June 1, 1995, Hayes filed a second charge of discrimination with the EEOC.[8] On July 26, 1995, the EEOC notified Hayes that the MCAD had referred her state discrimination claim. The EEOC issued a Right to Sue Letter to Hayes on December 14, 1995. Hayes filed this action on March 12, 1996.

## DISCUSSION

### Gulla's Motion to Dismiss

■ When reviewing a motion to dismiss, "[w]e must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Vartanian v. Monsanto Company,* 14 F.3d 697, 700 (1st Cir.1994); *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987). Gulla asserts that Hayes's Chapter 151B discrimination claim is barred as Hayes failed to name him as a respondent in her charge of discrimination to the MCAD as required by G.L. c. 151B, § 5 (a complaint shall "state the name and address of the person ... alleged to have committed the unlawful practice complained of"). Gulla also contends that Hayes did not file her charge within the applicable six month limitations period. Gulla finally argues that, even accepting Hayes's allegations as true, his behavior towards Hayes did not constitute sexual harassment as a matter of law.[9]

■ An MCAD charge must contain "appropriate identification of the complainant and the persons alleged to have committed unlawful discriminatory acts." 804 CMR § 1.03(4). The dual purposes of the filing requirement are to provide the MCAD with an opportunity to investigate and conciliate a discrimination claim and to provide notice to an accused of a potential lawsuit. See *Conroy v. Boston Edison Co.,* 758 F.Supp. 54, 57 (D.Mass.1991). There is no dispute that Gulla's alleged acts were recited in Hayes's charge; still, he was not named as a respondent. While no Massachusetts case seems directly in point, in a Title VII context the failure to name a party as a respondent in an EEOC charge is usually fatal to the right to sue. See *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 126 (7th Cir.1989). Title VII courts excuse a plaintiff's failure to name a party only where there is a connection between the named and unnamed parties, a mutuality of interests, and an absence of prejudice to the unnamed party, as, for example, where the unnamed party has received adequate notice of the complaint and has been given an opportunity to participate in the conciliation process. See *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241–1242 (2nd Cir.1995); *Virgo v. Riviera Beach Associates., Ltd.,* 30 F.3d 1350, 1358–1359 (11th Cir.1994). Hayes concedes that Gulla was never served with a copy of the MCAD charge. She contends, however, that her failure to name Gulla as a respondent was not prejudicial, as she filed her charge only to obtain the right to sue and that she never had an intention of seeking conciliation.

■ It is not apparent that Hayes's wishes in this regard are controlling. The primary purpose of the naming requirement is to give the anti-discrimination agency the opportunity to investigate and settle disputes

---

8. A copy of this charge is not included in either parties' submissions.

9. Gulla relies on the proposition that "Title VII is not a clean language act," *Scott v. Sears, Roebuck & Co.,* 798 F.2d 210, 213 n. 2 (7th Cir.1986), and what might be called the "stray remarks" doctrine. See *Lehman v. The Prudential Ins. Co. of America,* 74 F.3d 323, 329 (1st Cir.1996). The repeated sexual epithets and abusive acts attributed to Gulla stretch the protections of these safe harbor rules past their breaking point.

before lawsuits are filed. See *Park v. Howard Univ.*, 71 F.3d 904, 907–909 (D.C.Cir. 1995). The secondary purpose is to give the accused an opportunity through conciliation to extricate himself from a lawsuit. *Schnellbaecher*, 887 F.2d at 127. As Gulla was not named in Hayes's charge, he had no notice that he was a potential target of a lawsuit, and therefore had no pre-litigation opportunity to respond or seek conciliation on his own behalf. Nor can Hayes fairly argue that Gulla had constructive notice of her charge. Gulla was fired by Bendel on November 1, 1994, some five months before the charge was filed. Cf. *Sobotka v. Westfield Savings Bank*, 3 Mass.L.Rptr. No. 16, 346 (Sup.Ct., April 17, 1995) (MCAD charge of discrimination provides constructive notice only where unnamed employee holds an upper level management position). The failure to name Gulla in the MCAD charge is therefore sufficient reason to dismiss the Chapter 151B claim against Gulla.[10]

There is another. No authority appears to permit the naming of a co-worker at Gulla's level in a Chapter 151B complaint. While few Massachusetts cases are directly on point, Title VII case law provides guidance.[11] See *Wheatley v. American Telephone & Telegraph Co.*, 418 Mass. 394, 397, 636 N.E.2d 265 (1994). Most federal courts have concluded that Congress did not intend individual liability under Title VII, although a few have found that Title VII permits the naming of high level supervisors. See *Williams v. Banning*, 72 F.3d 552, 554–555 (7th Cir. 1995); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313–1317 (2nd Cir.1995); *Gary v. Long*, 59 F.3d 1391, 1399 (DC Cir.1995); *Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir.1995); *Cross v. State of Ala.*, 49 F.3d 1490, 1507 (11th Cir.1995); *Grant v. Lone Star Co.*, 21

F.3d 649, 653 (5th Cir.1994); *Smith v. St. Bernards Regional Medical Ctr.*, 19 F.3d 1254, 1255 (8th Cir.1994); *Sauers v. Salt Lake County*, 1 F.3d 1122, 1126–1127 (10th Cir.1993); *Johnson v. Northern Indiana Public Serv. Co.*, 844 F.Supp. 466, 469–470 (N.D.Ind.1994). But see *Hamilton v. Rodgers*, 791 F.2d 439, 442–443 (5th Cir.1986); *Paroline v. Unisys Corp.*, 879 F.2d 100, 106–108 (4th Cir.1989). Notably I can find no federal case where a court authorized an action under Title VII between co-workers with no supervisory authority.

In Count IV of her Complaint, Hayes alleges that Gulla's intentional conduct caused her severe emotional distress. Whether a complainant may maintain an action against a coemployee for intentional infliction of emotional distress is an open issue under Massachusetts law. See *Green v. Wyman–Gordon Co.*, 422 Mass. 551, 561–562 n. 15, 664 N.E.2d 808 (1996) (noting the conflict in authority). Because the intentional infliction claim in Count IV "raises a novel or complex issue of State law," I decline to exercise jurisdiction and will defer to the courts of Massachusetts. 28 U.S.C. § 1367(c)(1).

### Bendel's Motion for Summary Judgment

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gaskell v. Harvard Co-op. Soc.*, 3 F.3d 495, 497 (1st Cir.1993). A material fact is one which has "the potential to affect the outcome of the suit under applicable the law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir.1993).

---

**10.** Gulla also makes a limitations argument for dismissal of this claim. Chapter 151B, § 5 requires that a plaintiff file a complaint with the MCAD within six months of any violation of the statute. Hayes filed her charge of discrimination with the MCAD on March 30, 1995. Hayes alleges that in October, 1994, Gulla bumped her and called her a cunt. This culminating act in a pattern of harassing behavior clearly brings Gulla within six months limitation period.

**11.** Three Superior Court cases of which I am aware have permitted a supervisory employee to

be named in a Chapter 151B action on an "aiding and abetting" theory. Without commenting on the facts or precedential value of these cases, or the correctness of the theory, Gulla was not a supervisor and can in no sense be said to have "aided and abetted" Bendel's failure to discipline him more promptly. One federal district court opinion in Massachusetts has adopted the supervisory liability, aiding and abetting theory. See *Ruffino v. State Street Bank & Trust Co.*, 908 F.Supp. 1019, 1047–1048 (D.Mass.1995).

In considering the affidavit testimony and documentary evidence provided to the court, the non-moving party is indulged with all favorable inferences. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). A party may not resist summary judgment by pointing to a factual dispute upon which it bears the burden of proof at trial, unless that party presents evidence tending to prove that fact in its favor. See *F.D.I.C. v. Elder Care Services, Inc.*, 82 F.3d 524, 526–527 (1st Cir.1996).

■■■ Hayes's Title VII and Chapter 151B claims against Bendel assert that managerial employees condoned or permitted Gulla's sexual harassment thereby creating a hostile work environment which caused Hayes's constructive discharge. Title VII applies to employees who have been discriminated against at their workplace based upon gender. See 42 U.S.C. § 2000e. To establish Bendel's liability under Title VII in a co-worker sexual harassment case, Hayes must demonstrate (1) that the subject conduct was unwelcome, (2) that the conduct was based upon her sex, (3) that it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment, (4) that it was imputable on some factual basis to the employer, (5) that the employer knew or should have known about the harassment, and (6) that the employer failed to take prompt remedial action. See *Waymire v. Harris County, Tex.*, 86 F.3d 424, 428 (5th Cir. 1996). See also *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20–22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). The record, for purposes of this motion, is sufficient to establish that Gulla's conduct towards Hayes was unwelcome, severe, and, at least in some aspects, based upon her sex. The issue remains whether she has established that Bendel knew or should have known of Gulla's conduct and failed to take appropriate measures to stop it. See *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988).

To meet her burden, Hayes proffers her own affidavit, the affidavit of Lorraine Fish and the affidavit of a co-worker, Stephanie Katz. Katz states that she "was not aware of anyone at the Bendel store who did not appear aware of Mr. Gulla's mistreatment of Ms. Hayes." Katz Aff., at ¶ 6. Hayes also states that she repeatedly reported Gulla to Bendel management and felt "sure" that her managers knew "what had been going on between Gulla and me." Hayes First Aff., at ¶ 9. Finally, Hayes offers the recollection of Lorraine Fish that in the summer of 1994, Hayes came to her on several occasions to tell her that Gulla "had either called her something offensive, disconnected phone calls that were for her, or bad mouthed her to the rest of the department." Fish Aff., at ¶ 8. These conjectural assertions are inadequate to impute knowledge or notice of any claim of *sexual* harassment to Bendel's management. See *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). The only admissible evidence that Bendel's management knew of or was alerted to the fact that the clash between Hayes and Gulla had escalated into sexual dimensions is the complaint Hayes made to Fish on October 15, 1994.

Hayes, it will be recalled, submitted a written complaint at Fish's request on October 17, 1994. Fish immediately forwarded the complaint to Pegeen Rubinstein, Bendel's Vice President of Human Resources. On October 20, 1994, Gulla made an offensive statement about Hayes to Fish. Fish Aff., at ¶ 24. Fish reprimanded Gulla and called Rubinstein in New York to voice her concerns about Hayes's safety. Fish Aff., at ¶¶ 25–26. On October 22, 1994, Rubinstein travelled to Boston to investigate Hayes's allegations and directed Fish to suspend Gulla pending completion of her investigation. Fish Aff., at ¶ 27. Ten days later, Rubinstein terminated Gulla. Fish Aff., at ¶ 33.

■■■ To establish employer liability for a hostile work environment claim, a plaintiff must show that the employer "knew or should have known of the harassment, and took no effectual action to correct the situation." *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983). Where an employer takes prompt and effective remedial action upon learning of harassing conduct, summary judgment is appropriate. See *Callanan v. Runyun*, 75

F.3d 1293, 1296 (8th Cir.1996); *Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 (5th Cir.1994).[12] See also *Waymire,* 86 F.3d at 427 (fact that county's investigation took three months does not fail promptness test as actor was reprimanded on the day of the act and any delay was attributable to the organizational format of the investigation); *Williams v. Banning,* 72 F.3d 552, 555 (7th Cir.1995) (no liability where company took swift and decisive action against harassing supervisor); *Gary v. Long,* 59 F.3d at 1398–1399 (employer took energetic measures to enforce grievance procedures); *Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 107–108 (3rd Cir.1994) (same); *Carmon v. Lubrizol Corp.,* 17 F.3d 791, 794–795 (5th Cir.1994) (employer acted promptly when supervisors met with plaintiff on the day of the initial complaint and conducted a thorough investigation).

Because I conclude that Hayes has failed to show either that Bendel knew or should have known of Gulla's offensive conduct prior to October 15, 1994, or once that it did know that it failed to take effective remedial measures to insure that any harassment ceased, summary judgment will be entered for Bendel on Counts I and II.[13]

*ORDER*

For the foregoing reasons, Bendel's motion for summary judgment is *ALLOWED.* Gulla's motion to dismiss is *ALLOWED* as to Count III and as to so much of Count IV as alleges negligent infliction of emotional distress. Counts V–VIII are *DISMISSED* by agreement of the parties. The court *DE-*

*CLINES* jurisdiction over the remaining cause of action contained in Count IV.

SO ORDERED.

---

**12.** In analyzing the promptness of an employer's response to a sexual harassment claim, the court may consider "the entity's lines of command [and] organization format." *Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 309 (5th Cir.1987).

**13.** A careful reading of the record leads to the conclusion that this case has less to do with Bendel than it does with a savage vendetta waged between two antipathetic personalities searching for the weapon best designed to inflict maximum hurt on the other. Although it is not relevant to this proceeding, I cannot help but note that on February 3, 1995, Gulla filed his

own charge of discrimination with the MCAD accusing Bendel of failing to protect him from a homophobic campaign waged by Hayes. Bendel, caught between two fervently asserted claims of right, is damned if it does and damned if it doesn't. An employer in Bendel's situation can do no more than attempt to adjudicate for itself the superior claim, and either fire both employees, or as it did here, determine that one employee is more deserving of workplace protection than the other. The reward should ordinarily be but one lawsuit, not the two that Bendel appears to have drawn.