Karen WILLIAMS, Plaintiff–Appellant,

v.

Bruce BANNING, Defendant–Appellee.

No. 95–2023.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 5, 1995.

Decided Dec. 21, 1995.

Ivan E. Bodensteiner (argued), Valparaiso, IN, for Plaintiff–Appellant.

Joseph S. Reid (argued), Griffith, IN, for Defendant–Appellee.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Karen Williams filed a Title VII action solely against her former supervisor, Bruce Banning, alleging sexual harassment in the workplace. Because Title VII does not impose "employer" liability on a supervisor in his individual capacity for acts which violate the statute, we affirm the decision of the district court to grant dismissal.

## I

■ Dismissal was granted under Fed. R.Civ.P. 12(b)(6). Thus, our review is *de novo*, and for the purpose of this review we accept as true the facts alleged in the complaint. *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

Karen Williams worked as a secretary for Calumet Construction Corp. ("CCC"). Bruce Banning was her supervisor from November 1993 through March 1994. During this period, Banning subjected her to sexual harassment whenever both were at the job site. The harassment consisted of unwanted physical contact, including touching Williams' breasts and legs, kissing her, and other sexual advances and comments. Banning also made an uninvited visit to Williams' home. When Williams rejected Banning's advances, he retaliated by criticizing her work performance.

Williams complained to CCC's Human Resources department, initially asking the department to keep her complaint confidential. In March of 1994, she informed the department she could no longer work with Banning. CCC investigated her complaint and suspended Banning on March 29, 1994. Banning no longer works for CCC, which continues to employ Williams as a secretary.

## II

Williams filed suit in the district court, alleging sexual harassment in the workplace. Banning filed a motion to dismiss, arguing that Title VII did not apply to him. The district court agreed, ruling that Banning could not be held liable under Title VII as an individual, because he did not independently meet Title VII's definition of "employer."

## III

Congress amended Title VII in the Civil Rights Act of 1991 to permit victims of unlawful intentional discrimination to collect compensatory and punitive damages, unless they can otherwise recover under Section 1981 of the Act. 42 U.S.C. § 1981a(a)(1). The stated purpose of the 1991 amendments was "to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace" and "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination." Pub.L. No. 102–166, § 3(1), (4), 105 stat. 1071 (1991). Williams and Banning agree that both Title VII and its 1991 amendments are essentially silent on the issue of individual liability. They vigorously dispute what the silence means.

We recently decided the issue of individual liability under the Americans with Disability Act ("ADA"). *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1995). In that case, we held that the ADA's definition of "employer," which (like Title VII) includes an employer's agents, is simply a statutory expression of traditional *respondeat superior* liability and imposes no individual liability on agents. *Id.* at 1281. The original statute limited liability to entities employing more than fifteen workers. Similarly, the 1991 amendments to the Civil Rights Act imposed limits on damages according to the size of the employing entity. We stated in *AIC Security* that this statutory approach demonstrates that Congress did not intend to impose individual liability against an employer's agents. *Id.; accord Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir.1993) ("If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1049; 127 L.Ed.2d 372 (1994).

We noted that the holding in *AIC Security* only applied directly to the ADA. But we nonetheless recognized that Title VII, the ADA, and the Age Discrimination in Employment Act ("ADEA") use virtually the same definition of "employer,"[1] and that "[c]ourts

---

1. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person[.]" 42 U.S.C. § 2000e(b). The corresponding provisions of the ADA and ADEA

routinely apply arguments regarding individual liability to all three statutes interchangeably." *AIC Security,* 55 F.3d at 1279–80; *see also Newman v. GHS Osteopathic, Inc., Parkview Hospital Division,* 60 F.3d 153, 156–57 (3d Cir.1995). Indeed, in *AIC Security* we drew support for our holding from cases rejecting individual liability under Title VII. 55 F.3d at 1280 (citing *Smith v. Lomax,* 45 F.3d 402 (11th Cir.1995); *Grant v. Lone Star Co.,* 21 F.3d 649 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994); *Miller,* 991 F.2d at 587).[2]

■ Thus, unless the definition of "employer" in Title VII is meaningfully distinguishable from that in the ADA, our reasoning in *AIC Security* dictates the disposition of the case at bar. Williams presents no such distinguishing arguments.

Williams first maintains that the plain language of Title VII, imposing liability on employers and including agents in the definition of "employer," requires the imposition of individual liability. "When a statute speaks with clarity to an issue judicial inquiry into the statute's meaning ... is finished." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). We considered and rejected the "plain language" argument in *AIC Security,* 55 F.3d at 1281, as have most appellate courts which have directly considered the question. *See, e.g., Tomka v. Seiler Corp.,* 66 F.3d 1295, 1314 (2d Cir.1995); *Grant v. Lone Star,* 21 F.3d at 653; *Miller,* 991 F.2d at 587; *but see Ball v. Renner,* 54 F.3d 664, 667 (10th Cir.1995). Moreover, we have previously recognized that the statutory language at issue is ambiguous, susceptible of several possible meanings. *Shager v. Upjohn Co.,* 913 F.2d 398, 404 (7th Cir.1990) (ADEA).

Williams' principal argument derives from the broad purpose of Title VII, which she sees as providing redress—including, under the 1991 amendments to the Civil Rights Act, both punitive and compensatory damages—for victims of discrimination and harassment. Congress, Williams argues, must have intended individual liability, because victims like her have no remedy under Title VII if supervisors like Banning are not individually liable.

It is true that most cases rejecting individual liability assume that under the doctrine of *respondeat superior,* the victim can sue her employer instead. *See, e.g., AIC Security,* 55 F.3d at 1282 ("The employing entity is still liable"); *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir.1991) ("the proper method for a plaintiff to recover under Title VII is by suing the employer").[3] That would be futile in the case now before us.

are found at 42 U.S.C. § 12111(5)(A) (ADA), and 29 U.S.C. § 630(b) (ADEA).

2. The Ninth Circuit has been categorical in its rejection of individual liability. *Greenlaw v. Garrett,* 59 F.3d 994, 1001 (9th Cir.1995). The Second Circuit too has recently rejected individual liability under Title VII. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313–17 (2d Cir.1995). The Eleventh Circuit, despite earlier wavering, has recently reaffirmed its rejection of individual liability. *Cross v. Alabama,* 49 F.3d 1490, 1504 (11th Cir.1995). The Eighth Circuit has not formally addressed the question of individual liability under Title VII, but rejected individual liability under a similarly worded statute. *Lenhardt v. Basic Institute of Technology,* 55 F.3d 377, 380–81 (8th Cir.1995) (interpreting Missouri Human Rights Act by analogy with Title VII). The Fifth and Tenth Circuits have sent mixed messages. *Compare Grant,* 21 F.3d at 649, and *Sauers v. Salt Lake Cty.,* 1 F.3d 1122, 1124–25 (10th Cir.1993) (rejecting individual liability) *with Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 (5th Cir.1994) (supervisors who exercise employer's

traditional rights are liable under Title VII), and *Ball v. Renner,* 54 F.3d 664, 668 (10th Cir.1995) (individual liability under Title VII approved in theory, but considered an "open question"). The Sixth Circuit has recognized individual liability under Title VII *in dictum. York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982). The Fourth Circuit has rejected individual liability under the ADEA, though stating *in dictum* that an employee "may not be shielded as an employer's agent" except where performing plainly delegable tasks. *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 n. 1 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994).

3. *Paroline v. Unisys Corp.,* 879 F.2d 100, *vacated in part,* 900 F.2d 27 (4th Cir.1990) (*en banc*) is not to the contrary. *Paroline* held that "[a]n individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." *Id.* at 104. The purpose of determining whether

■ Employers are not strictly liable under Title VII for the discriminatory acts of their agents. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986). Appellate courts have interpreted *Meritor* to mean that an employer is liable for a supervisory employee's sexual harassment if the supervisor's acts fell within the scope of his authority or were foreseeable, and the employer failed to take appropriate remedial action. *See Shager,* 913 F.2d at 404; *accord Garcia v. Elf Atochem North America,* 28 F.3d 446, 451 (5th Cir.1994); *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 803 (6th Cir.1994). *But see Karibian v. Columbia University,* 14 F.3d 773, 780 (2d Cir.) (employer absolutely liable if supervisor uses actual or apparent authority to further harassment), *cert. denied,* —— U.S. ——, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994).

In the instant case, CCC provided a system by which victims of harassment could make their complaints known to the company. Once Williams made use of this system, CCC investigated promptly and took swift and decisive action against Banning. Consequently, Williams correctly determined that CCC is not liable for Banning's acts of harassment.

It does not follow, however, that Title VII must provide more than *respondeat superior* liability for a worker, like Williams, whose employer has already taken appropriate remedial action. *Meritor* and its progeny do not hold that an agent's acts of harassment are not attributable to a principal who takes prompt remedial action, just that the principal/employer is not liable for such acts. *Meritor,* 477 U.S. at 72, 106 S.Ct. at 2408; *Brooms v. Regal Tube Co.,* 881 F.2d 412, 421 (7th Cir.1989).

Accordingly, Banning's acts of harassment are attributable to CCC though CCC is not liable to Williams for its agent's harassment. It follows that CCC's prompt action constitutes all the redress to which Williams is entitled under Title VII. Under this rationale, Williams has already received considerable recompense, albeit not in monetary form. She has an employer who was sensitive and responsive to her complaint. She can take comfort in the knowledge that she continues to work for this company, while her harasser does not—and that the company's prompt action is likely to discourage other would-be harassers. This is precisely the result Title VII was meant to achieve. If a victim of harassment suffers mental and emotional distress, embarrassment, and humiliation so severe that even an employer's prompt action does not provide sufficient compensation, it is not unreasonable to assume that Congress intended the victim to turn to traditional tort remedies for redress. This avenue remains open to Williams.

This analysis is consonant with *AIC Security.* The plaintiff in that case argued that where an employer is bankrupt or otherwise judgment-proof, a plaintiff can only recover if there is individual liability. "While true," we noted, "that is not enough for us to upset the structure Congress has set up." *AIC Security,* 55 F.3d at 1282 n. 9. That the employer in the case at bar is judgment-proof because it is innocent of wrongdoing, rather than bankrupt, does not change matters.

## IV

■ Because a supervisor does not, in his individual capacity, fall within Title VII's definition of employer, Williams can state no set of facts which would enable her to recover under the statute. The district court's dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted was proper.

AFFIRMED.

the individual harasser met this definition, however, was to ascertain whether the employer could be held liable for the harassment under the doctrine of *respondeat superior. Id.* at 104–05.