107 F.3d 874
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raul MACIAS, Defendant-Appellant.
 No. 96-2378.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 17, 1996.
Decided Jan. 3, 1997.
 
 Before COFFEY, FLAUM and EVANS, Circuit Judges.
 
 ORDER
 
 1
 On January 17, 1992, Raul Macias sold one quarter kilogram of cocaine to Ernesto Flores. Flores and Macias were indicted in September 1994 with one count of conspiracy to possess with intent to distribute and the distribution of cocaine in violation of 21 U.S.C. § 846 and one count of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). After one day of trial on Count II, Macias entered a blind plea of guilty.[1]
 
 
 2
 At Macias' sentencing hearing, testimony was provided by Flores and Vargas, Macias' partner, to aid in determining the amount of cocaine for which Macias was to be sentenced in addition to the one quarter kilogram to which he had pleaded guilty.[2] Vargas estimated that he and Macias had sold a total of approximately 30 kilograms of cocaine during their partnership. The district court concluded that while Vargas' testimony was somewhat fuzzy, he had testified with "modest specificity" regarding three transactions totaling 6 kilograms in which he and Vargas had participated as partners.[3] The court calculated a total of 7.25 kilograms of cocaine attributable to Macias including the quarter kilogram of conviction, 1 kilogram from Flores' testimony and 6 kilograms from Vargas' testimony. Macias was sentenced to 130 months in prison and five years supervised release. Macias appeals contending that the district court erred in determining the amount of cocaine for which he was held responsible under the Sentencing Guidelines ("Guidelines").[4] We affirm.
 
 
 3
 The district court's determination regarding whether the uncharged offenses are part of the same course of conduct and the quantity of drugs attributable to the defendant will not be disturbed unless they are clearly erroneous.[5] Id. (citing United States v. Townsend, 73 F.3d 747, 751 (7th Cir.1996); United States v. Sykes, 7 F.3d 1331, 1335 (7th Cir.1993); United States v. Beler, 20 F.3d 1428, 1431 (7th Cir.1994)). Macias asserts that Vargas' testimony is unreliable and therefore cannot be used to support a finding of the "same course of conduct" for purposes of § 1B1.3.[6] Credibility determinations made by a district court are accorded exceptional deference. Acosta, 85 F.3d at 280 (noting that a witness' testimony was vague, but deferring to the district court's assessment that the witness was credible) (citing United States v. Anaya, 32 F.3d 308, 314 (7th Cir.1994) (rejecting defendant's claim that codefendant's testimony was unreliable when testimony was supported by the record and defendant offered no direct evidence calling witness' testimony into question); United States v. Kozinski, 16 F.3d 795, 820 (7th Cir.1994) (rejecting the defendant's assertion that a witness' testimony was incredible, stating that it is not the appellate court's role to reexamine credibility determinations, and agreeing that the witness' testimony was facially plausible and uncontradicted by extrinsic evidence)).
 
 
 4
 The district court's decision to credit certain parts of Vargas' testimony was appropriate, and the testimony "bore sufficient indicia of reliability to support its probable accuracy." U.S. Sentencing Guidelines § 6A1.3(a). While Vargas may not have been clear with respect to certain transactions, Flores, whom the district court found to be credible and intelligent, corroborated Vargas' testimony that he and Macias were partners. The district court also stated that Vargas' testimony regarding the system that he and Macias used to purchase and deliver drugs contributed to its reliability. In addition, although the district court concluded that Vargas' estimate regarding a total of 30 kilograms was unsupported, it noted that Vargas did provide additional detail with respect to the two 1 kilogram deals and the one 4 kilogram deal which the court found believable and ultimately used in determining Macias' sentence. Henderson, 58 F.3d at 1152 (stating that the true size of a drug conspiracy could be approximated for sentencing purposes by the district court "either by relying on testimony if found credible in its totality or regarding certain transactions ") (emphasis added). Further, Macias does not point to any particular inconsistencies regarding Vargas' testimony about the three transactions which the district court credited, nor does he offer any direct evidence to contradict Vargas' testimony.[7] Consequently, its determination that Macias' relevant conduct included 6 kilograms was neither clearly nor plainly erroneous.
 
 
 5
 Nor was the district court's failure to expressly state that the 6 kilograms was related to the quarter kilogram of conviction erroneous. Generally, the district court is required to "explicitly state and support, either at the sentencing hearing or (preferably) in a written statement of reasons, its finding that the unconvicted activities bore the necessary relation to the convicted offense." United States v. Duarte, 950 F.2d 1255, 1263 (7th Cir.1991). Yet an express finding is not required. In attributing credibility to certain parts of Vargas' testimony, the district court implicitly found that the transactions to which Vargas testified and Macias' role in them constituted the same course of conduct as the offense of conviction for purposes of § 1B1.3. Acosta, 85 F.3d at 279-80 (upholding a finding of relevant conduct under § 1B1.3 absent an express statement by the district court where "[i]t was ... clear from the proceedings that the judge considered those transactions to be relevant conduct under the applicable Guideline provision" because the district court carefully considered whether the information contained in the PSR was reliable and whether a certain witness' testimony regarding the relevant conduct had been corroborated). While it would have been preferable for the district court expressly to have stated that the requisite relationship existed between the relevant conduct and the offense for which Macias was convicted, the failure to do so does not invalidate the sentence. Taylor, 72 F.3d at 548 (concluding that although the "district court should have been more explicit about the relationship between the 'relevant conduct' and the offense of conviction in this case," the record amply supported the conclusion that the necessary relationship existed because the drug-dealing incidents which were part of the conspiracy were not isolated events, they occurred at regular intervals and took place within a relatively short period of time (approximately 10 months), and involved many of the same individuals.
 
 
 6
 Vargas' testimony indicated that he and Macias had been partners for a relatively short period, 10 to 11 months. Although there were a number of different buyers, he and Macias generally received the drugs which they sold in their partnership from Salgado and sold the drugs in Aurora, Illinois. While not expressly stated, it is clear from the district court's conclusion in this case that he believed that Vargas and Macias were partners[8] and that the descriptions of certain transactions which the court included in calculating the drug amount attributable to Macias were sufficiently specific to be credible. The judgment of the district court is
 
 
 7
 AFFIRMED.
 
 
 
 [1]
 The government moved to dismiss Count I against Macias but a jury trial began in June 1995 on Count II
 
 
 [2]
 Flores had agreed to cooperate with the government and pleaded guilty to Count I. Flores testified at Macias' sentencing hearing that he had purchased or was fronted a total of one kilogram of cocaine from Macias and Luis Vargas, Macias' partner. The district court found Flores to be a credible and intelligent witness and thus found that his testimony supported sentencing Macias for one kilogram in addition to the quarter kilogram for which Macias had been convicted. Macias does not challenge on appeal the district court's inclusion of this additional one kilogram as relevant conduct
 
 
 [3]
 One transaction occurred in which he and Macias bought 1 kilogram of cocaine from their supplier, Marcelino Salgado, which had been hidden inside a pipe. In another transaction, he and Macias sold 1 kilogram of cocaine to an individual named Jewel. In a third transaction, he accompanied Macias to pick up 4 kilograms of cocaine from Salgado on credit which they later sold, and for which he had made a $17,000 payment to Salgado
 
 
 [4]
 Under the Guidelines, a defendant may be charged with all relevant conduct that is part of the same course of conduct or common scheme or plan as the offense of conviction, even if he has not been convicted or charged with the additional offenses. United States v. Thomas, 969 F.2d 352, 355 (7th Cir.1992); U.S. Sentencing Guidelines § 1B1.3
 
 
 [5]
 The government asserts that the appropriate standard of review is plain error because the defendant did not challenge the district court's relevant conduct determination at sentencing, rather he challenged only Vargas' credibility, and thus has waived the issue on appeal, citing United States v. Taylor, 72 F.3d 553, 543 (7th Cir.1995)
 
 
 [6]
 Offenses are part of a common scheme or plan when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." U.S. Sentencing Guidelines, § 1B1.3(a)(2) comment, n. 9(A). Alternatively, conduct may be part of the same course of conduct if the offenses are "part of a single episode, spree, or ongoing series of offenses." Id., comment, n. 9(B)
 
 
 [7]
 Macias states that Vargas' testimony also cannot be credible because he was a long-time drug dealer and had other sources of supply outside of Salgado. The fact that Vargas himself was a drug dealer does not require the court totally to disregard his testimony. See, e.g., Taylor, 72 F.3d at 543-44 (noting that a district judge should carefully scrutinize testimony offered by a drug addict, but agreeing that the addict's testimony was reliable because it was corroborated and noting that the PSR and the district court "discounted" the estimates provided by certain witnesses to offset "adversely affected perception and memory"); see also Henderson, 58 F.3d at 1149; United States v. Will, 31 F.3d 510, 514 (7th Cir.1994)
 
 
 [8]
 Macias admits that the Macias and Vargas were "common accomplices" with respect to at least two of the transactions with Flores, but asserts without explanation that the other transactions engaged in between Macias and Vargas during the same time period constituted "activity of the same kind rather than a common scheme or plan." Appellant's Br. at 20