106 F.3d 209
 Marshall SPIEGEL, Plaintiff-Appellant,
v.
CITY OF CHICAGO, a municipal corporation, Lieutenant Jeffrey
Wilson, Captain John Martin, in their official
capacities as City of Chicago Police
Officers, et al., Defendants-Appellees.
 No. 96-1736.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 4, 1996.
Decided Feb. 4, 1997.
 
 John L. Stainthorp (argued), People's Law Office, Chicago, IL, for plaintiff-appellant.
 Lawrence Rosenthal, Jean Dobrer (argued), Benna R. Solomon, Susan S. Sher, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for defendants-appellees.
 Before RIPPLE, MANION, and DIANE P. WOOD, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Marshall Spiegel was evicted from his Chicago apartment but left some of his belongings behind. He showed up one day to retrieve them and found the locks had been changed. The building manager would not unlock the door and instead called for assistance from the Chicago police. The police prevented Spiegel from attempting to enter the apartment and threatened to arrest him if he persisted. Spiegel claims that blocking him from re-entering amounted to a seizure in violation of his Fourth Amendment rights; the City of Chicago contends that a person cannot be seized if he is free to go anywhere else except the one place he wants to enter. We decline Spiegel's invitation to decide a yet undetermined Fourth Amendment issue. Rather, we affirm the district court's order dismissing Spiegel's Fourth Amendment claim because the officers are qualifiedly immune from his suit.[1]
 
 I.
 
 2
 In May 1994 Hollywood Towers Condominium Association sued to evict tenant Marshall Spiegel. The Circuit Court of Cook County granted Hollywood Towers possession of Spiegel's apartment. Spiegel appealed the court's order to the Illinois Appellate Court and moved to stay enforcement of the order. The appellate court denied Spiegel's motion on July 6, 1994. On July 18, Spiegel showed up at his apartment but found the locks had been changed. After a discussion between Spiegel and the building manager, the Chicago police were called. Defendants Lieutenant Jeffrey Wilson, Captain John Martin, and Commander Andrew Martorano responded to the call. According to Spiegel's complaint:
 
 
 3
 [D]efendants Wilson, Martin and Martorano refused to allow plaintiff to go to or enter his residence, ordering him not to go to or in the residence on that day or at any time in the future, under threat of immediate arrest if he did not obey their command.
 
 
 4
 First Amended Complaint at p 8.
 
 
 5
 Spiegel contends that the Chicago police officers knew the Cook County Sheriff's Department had not evicted him when they barred his entry to the apartment. According to the complaint, the defendants are liable under 42 U.S.C. § 1983 for an unconstitutional seizure of his person "in forcing [him] not to enter his home." The district court found his claim to be "unique," but granted the City of Chicago's Rule 12(b)(6) motion to dismiss on the ground of qualified immunity. Spiegel appeals from the district court's judgment, which we review de novo, accepting as true the facts alleged in his complaint. Williams v. Banning, 72 F.3d 552, 553 (7th Cir.1995).
 
 II.
 
 6
 The single issue before us is whether Spiegel was "seized" in violation of the Fourth Amendment when the Chicago police officers denied him access to the locked apartment. Spiegel concedes that he was not seized in the traditional sense because he was not physically detained. Quite the contrary, Spiegel could have walked away (and eventually did) at any time. However, Spiegel claims that he was seized because his movement into the apartment was restricted.
 
 
 7
 We are aware that seizures can take many forms. A person may be seized even though only slightly touched. California v. Hodari D., 499 U.S. 621, 625, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). Likewise, he may be seized if he is not touched at all but submits to an officer's order accompanied by a show of authority, thus restraining his liberty. Id. at 626, 111 S.Ct. at 1550-51. Based on the sparse record before us (this case comes to us from a motion to dismiss), we find it difficult to say exactly what happened that day when Spiegel showed up at his former apartment. He apparently was not touched by the officers, and while it can be said he yielded to their authority (he was not arrested, so we assume he did not attempt to re-enter his apartment), he may also have been yielding to the reality of his situation: he could not enter his apartment because the locks had been changed. In any event, the only liberty restrained was that of entering the apartment. He certainly was free to leave; indeed, that is what he was persuaded to do.
 
 
 8
 At oral argument, Spiegel's attorney suggested that the Fourth Amendment was broad enough to cover the type of restriction imposed by the police in this case, and, indeed, contended that any other result would constitute a "remarkable and unprecedented limitation on the scope of the Fourth Amendment." Hyperbole aside, it is unclear what the officers did that was so remarkable: responding to the landlord's complaint, the police stood before a locked door and told Spiegel not to attempt to pass through it. Even without the presence of the police, Spiegel would have been staring at the same locked door of an apartment already repossessed by the landlord.
 
 
 9
 The district court determined that Kernats v. O'Sullivan, 35 F.3d 1171 (7th Cir.1994), was "remarkably similar" to this case. In Kernats, a landlord obtained an order of possession from a state court and ordered the tenants to leave the premises. When they failed to leave, he asked the local police to cite them for trespassing. A police officer (O'Sullivan) visited the property and ordered the tenants to leave by the end of the day or face arrest. Fearing arrest, they complied, but then filed a § 1983 suit alleging that O'Sullivan unreasonably seized them when he ordered them to leave. The district court found no seizure and dismissed the suit. On appeal, the court divided three ways and could not agree on whether the tenants were seized.
 
 
 10
 The obvious distinction between this case and Kernats is that the Kernats family already was occupying its dwelling when visited by the police; Spiegel was not. The Kernats were not told (as Spiegel was) that they could go anywhere but the one place they wanted to go. Rather, they were told that they had to leave the one place they were presently occupying or face arrest. In all events, Spiegel directs us to no case more analogous to the facts of his own than Kernats.[2] It is therefore of some significance that the Kernats panel did not hold that the family was seized in violation of the Fourth Amendment. Instead, the court upheld the district court's dismissal of the suit on the ground of qualified immunity.
 
 
 11
 Officers enjoy qualified immunity so long as their conduct did not violate a statutory or constitutional right that was clearly established at the time they acted. Kernats, 35 F.3d at 1176 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Even if the officers violated Spiegel's Fourth Amendment rights in the manner he claims (an issue we leave unresolved here), his right not to have the police prevent him from entering an apartment that was in the possession of the landlord was not clearly established at the time the police blocked his attempt to enter. See Harlow, id. ("governmental officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). The officers' conduct was not contrary to precedent. Kernats, 35 F.3d at 1176 ("we look first to case law on point or in closely analogous areas" to determine if reasonably diligent governmental officials would have known of the law and tailored their conduct accordingly). Nor was it so shocking as to render precedent unnecessary. Id. ("one need not cite a case at all if the constitutional violation is obvious"). If anything, the cases cited by Spiegel confirm that the law was unsettled in this area even before Kernats, and Kernats leaves the law unresolved. Accordingly, we find that the individual officers were entitled to qualified immunity and were correctly dismissed from this suit by the district court.
 
 III.
 
 12
 The officers are qualifiedly immune from Spiegel's suit. We recognize that this decision does little to clarify an unsettled question of Fourth Amendment law. But because we can affirm the district court for the reasons stated, there is no need to explore uncharted territory. The decision of the district court is
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 Spiegel brought other claims arising under state law; these were remanded by the district court to the Circuit Court of Cook County
 
 
 [2]
 The cases he relies heavily upon, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and McGann v. Northeast Illinois Regional Commuter R.R. Corp., 8 F.3d 1174 (7th Cir.1993), involve individuals who were restricted by the police from going about their own business. In other words, they were not free to leave, whereas Spiegel certainly was. He could have gone anywhere with the exception of his former apartment, which at that point had new locks and was under the total control of his landlord. The only things "seized" may have been some of his possessions he claims were still inside, but Spiegel is not asserting a property seizure in this appeal