**Shannon M. SULLIVAN, Plaintiff,**

v.

**The VILLAGE OF McFARLAND, Gregory M. Leck, and Patrick O'Dell, Defendants.**

**No. 06–C–025–C.**

United States District Court, W.D. Wisconsin.

Aug. 3, 2006.

---

Paul D. Curtis, Axley Brynelson, LLP, Madison, WI, for Defendants.

OPINION and ORDER

CRABB, District Judge.

In this civil action for monetary relief, plaintiff Shannon M. Sullivan contends

that defendants Village of McFarland, Gregory Leck and Patrick O'Dell discriminated against her because of her gender in violation of Title VII of the Civil Rights Act of 1964 and the Fourteenth Amendment of the United States Constitution when they terminated her probationary employment as a Village of McFarland police officer. Jurisdiction is present under 28 U.S.C. § 1331.

From the parties' proposed findings of fact, I find the following to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiff Shannon M. Sullivan was employed as a police officer with the Village of McFarland from November 21, 2002 to January 16, 2004.

Defendant Village of McFarland is a Wisconsin municipality.

Defendant Gregory Leck is Chief of Police for the Village of McFarland.

At all times relevant to this lawsuit, defendant Patrick O'Dell was a lieutenant with the Village of McFarland police department.

### B. *Probationary Employment*

On November 21, 2004, plaintiff was hired as a probationary police officer. (Following her interview for the position, she was ranked as the top candidate.) Under department policy, plaintiff was required to serve an 18–month probationary term. During that time, her supervisor, Lieutenant Michael Klementz, formally evaluated her performance at designated intervals. Until December 20, 2003, plaintiff's performance as a probationary officer was satisfactory: although her supervisor noted occasional problems with her paperwork, conflicts with co-workers, and "self initiated field activity," he observed no "significant concerns."

### C. *December 20, 2003*

On December 20, 2003, at approximately 1:00 a.m., Deputy Ladick, a Dane County Sheriff's Deputy, was pursuing a motorist in the Village of McFarland and radioed for assistance using the code "10–80." (A "10–80" is the designation used to indicate that a motorist is being pursued.) Klementz, plaintiff and Joseph Maurer, another probationary police officer, were at the police station when they heard Ladick's call. All three responded. Klementz was the first to leave the parking lot, followed by Sullivan, and then Maurer, who left the parking lot after the others. All three officers activated their squads' emergency lights and sirens and traveled at approximately 40 miles an hour.

About five blocks from the police station, Klementz rounded a corner and lost control of his vehicle. At the time, plaintiff was approximately two and one half car lengths behind him. Plaintiff saw Klementz's car spin around, slide across the width of the road twice, and then "jump the curb" traveling backward. After glancing quickly at the road to see whether there was ice on it, plaintiff checked her side mirror and saw Klementz's car next to or on the curb of the road. She did not see Klementz's car as it struck a sign and crashed into a tree on the front lawn of the Gingerbread House day care center. Plaintiff continued to respond to Ladick's call and did not stop to check on Klementz, call him on the radio or radio for help.

Shortly thereafter, Maurer drove his squad car past the scene of the accident, which he had not witnessed in any part. As he drove by Klementz's car, Maurer saw "for a split second" that a marked squad car was in front of the Gingerbread House Day Care Center. Maurer did not stop to see whether the driver needed

assistance and did not realize that Klementz had been involved in an accident until he caught up to plaintiff and Ladick. At that time, Maurer heard dispatch report that a McFarland police officer had been injured in an accident while responding to a "10–80." Plaintiff remained with Ladick while Maurer returned to the accident scene, where he found Klementz lying on the ground, being tended by a local resident. Klementz was taken to the hospital and diagnosed with a concussion.

Later that day, defendant Leck spoke with plaintiff and Maurer about emergency responses and the duty of an officer to maintain control of his or her vehicle. Defendant Leck told plaintiff and Maurer that they had made a "rookie mistake" by not stopping to check on Klementz. Defendant Leck warned them that young officers often get "tunnel vision" and that their mistake should be a learning experience that would not happen again. Defendant Leck directed plaintiff and Maurer to submit complete, accurate reports regarding what had occurred.

Defendant Leck asked the Dane County Sheriff's Department to investigate Klementz's accident. There was nothing in the report prepared by the sheriff's department to indicate that plaintiff had done anything wrong.

Defendant Leck asked defendant O'Dell to assist him in investigating Klementz's accident and the responses to it. After reviewing the sheriff's report, the reports prepared by plaintiff and Maurer, and the video footage from Maurer's squad car showing what Maurer had seen as he drove by the scene of Klementz's accident, defendant Leck decided to suspend Klementz without pay for two days, terminate plaintiff and not discipline Maurer in any way. Defendant O'Dell agreed with defendant Leck's decision to terminate plaintiff.

Plaintiff was fired on January 16, 2004. No significant deficiencies or incidents were noted in her personnel file and she was not provided with a written explanation of the reason for her termination. When she asked the reason for her termination, defendant Leck told her that her response to Klementz's accident had led to her dismissal.

### D. Treatment of Other Probationary Officers

Before defendant Leck became police chief, Dale Steffes and Robert Geitz were hired as probationary officers with the Village of McFarland police department. Steffes engaged in six incidents of inappropriate conduct before his probationary employment was terminated, including referring to a person as a "butthead" in his daily log, speaking rudely to citizens, driving his police squad car recklessly, throwing a soda bottle against a wall and screaming obscenities when one of his police reports was changed by another officer and violating policy by speaking with a citizen after she had filed a complaint against him. Steffes was given warnings prior to the termination of his employment.

Geitz's probation was extended even though there were concerns that he had intimidated young officers, failed to follow the directions of his senior officers, filed inaccurate reports and citations and lacked common sense and practical judgment. Geitz was given warnings and opportunities to correct these alleged deficiencies.

While on probation, Maurer suffered a work-related injury and missed 60 days of work. His probationary period was extended by 60 days in order to permit him to submit proof that he had completed the college credits required for his certification as a law enforcement officer. (Maurer had completed the credits, but had not submitted his transcript in a timely fashion.)

## OPINION

### A. *Proper Defendant to Plaintiff's Claims*

Before discussing the merits of plaintiff's claims, a word on the proper defendants is in order. Without distinguishing between plaintiff's Title VII and § 1983 claims, defendants contend that defendant O'Dell is not an appropriate defendant to this lawsuit because he did not have the authority to terminate plaintiff's employment. Defendants concede that defendants Leck and Village of McFarland are proper defendants in this action.

Title VII authorizes suits against employers, not employees. *United States Equal Employment Opportunity Commission v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1281 (7th Cir.1995) (no individual liability under Title VII, ADA or ADEA). The Court of Appeals for the Seventh Circuit has held repeatedly that Title VII does not authorize suits filed against supervisors in their individual capacities. *Williams v. Banning,* 72 F.3d 552, 553–554 (7th Cir.1995); *Robinson v. Sappington,* 351 F.3d 317, 332 n. 9 (7th Cir.2003). For that reason, the proper defendant to plaintiff's Title VII claim is plaintiff's employer, defendant Village of McFarland, not defendants Leck or O'Dell.

Although Title VII does not authorize suits filed against supervisors in their individual capacities, *Williams v. Banning,* 72 F.3d 552, 553–554 (7th Cir. 1995), plaintiff's discrimination claims against defendants Leck and O'Dell remain cognizable under 42 U.S.C. § 1983, to the extent that the conduct in which each defendant engaged is alleged to have violated plaintiff's constitutional right to equal protection. For a defendant to be liable under § 1983, he must have participated directly in a violation of the plaintiff's constitutional rights. *Hildebrandt v.*

*Illinois Dept. of Natural Resources,* 347 F.3d 1014, 1036 (7th Cir.2003). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir.1996). Although defendant O'Dell did not terminate plaintiff himself, it is undisputed that he participated in the decision to fire her. Consequently, plaintiff has shown personal involvement on the part of both defendants Leck and O'Dell.

That leaves defendant Village of McFarland. Local governing bodies, such as defendant Village of McFarland, may be sued under 42 U.S.C. § 1983 only when their allegedly unconstitutional actions were the result of the implementation or execution of a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or were undertaken "pursuant to governmental custom, even [though the] custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The decisions of a municipality's final decision maker (in this case defendant Leck) are attributable to the municipality itself. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *McGreal v. Ostrov,* 368 F.3d 657, 685 (7th Cir.2004). Because defendant Leck's decision to terminate plaintiff was made in the course of his duties as a final decision maker for the village with respect to the employment of probationary police officers, defendant Leck's decision *was* the village's decision. *See, e.g., McGreal v. Ostrov,* 368 F.3d 657, 686 (7th Cir.2004) (police chief and village both proper defendants to plaintiff's wrongful

termination claim under § 1983). Consequently, the village is a proper defendant to plaintiff's § 1983 claim.

### B. *Discrimination*

■ Plaintiff contends that she was terminated from her employment as a probationary police officer not because of her actions on December 20, 2003, but because of her sex. According to plaintiff, although Maurer and other male probationary officers were given opportunities to correct their on-the-job mistakes, she was not given the same opportunity. To establish liability under either § 1983 or Title VII, plaintiff must demonstrate that her sex was a motivating factor in defendants' decisions regarding her employment. *Venters v. City of Delphi,* 123 F.3d 956, 973 n. 7 (7th Cir.1997) (Title VII); *Hunter v. Underwood,* 471 U.S. 222, 225, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985) (42 U.S.C. § 1983). Although defendant Village of McFarland is the proper defendant under Title VII, its liability is premised on defendant Leck's actions because, as Chief of Police, he was the decision maker responsible for terminating plaintiff's employment.

■ The standard for imposing liability on a defendant is essentially the same with respect to § 1983 and Title VII. *Williams v. Seniff,* 342 F.3d 774 (7th Cir.2003) ("Our cases make clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection."); *Malacara v. City of Madison,* 224 F.3d 727, 729 (7th Cir.2000) (using same framework to analyze claims under § 1983 and Title VII).

A plaintiff can meet her burden of proving intentional discrimination using either the direct or the indirect method of proof. In this case, plaintiff proceeds under the indirect method only, which involves the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To survive summary judgment under *McDonnell Douglas,* plaintiff has the initial burden to establish a *prima facie* case of discrimination. *Hong v. Children's Memorial Hospital,* 993 F.2d 1257, 1261 (7th Cir.1993). If plaintiff makes out a *prima facie* case, she is entitled to "a presumption that the employer unlawfully discriminated against the employee." *EEOC v. Our Lady of the Resurrection Medical Center,* 77 F.3d 145, 148 (7th Cir. 1996) (quoting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

■ Once plaintiff has made a *prima facie* case, defendant has the burden of rebutting the presumption by coming forward with a legitimate nondiscriminatory reason for the employment actions. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If defendant can do so, plaintiff must then demonstrate that there is a genuine issue of material fact on the question whether the defendant's stated reason for plaintiff's termination is pretextual. *Hudson v. Chicago Transit Authority,* 375 F.3d 552, 561 (7th Cir.2004). "Although the burden of production shifts under [the indirect] method, 'the burden of persuasion rests at all times on the plaintiff.'" *Haywood v. Lucent Technologies, Inc.,* 323 F.3d 524, 531 (7th Cir.2003) (quoting *Klein v. Trustees of Indiana Univ.,* 766 F.2d 275, 280 (7th Cir.1985)). Defendants are entitled to summary judgment unless plaintiff introduces evidence from which a reasonable jury could conclude that the nondiscriminatory reason put forth by defendants is a lie. *Shager v. Upjohn Company,* 913 F.2d 398, 401 (7th Cir.1990).

■ To state a *prima facie* case of gender discrimination under Title VII, a female plaintiff must show that she (1) is a

member of a protected class; (2) is performing her job satisfactorily; (3) suffered an adverse employment action; and (4) was treated less favorably than at least one similarly situated male colleague. *Farrell v. Butler University*, 421 F.3d 609, 613 (7th Cir.2005). Defendants do not dispute that plaintiff is a woman, that her termination was an adverse employment action or that, prior to December 20, 2003, she was performing her job satisfactorily. However, defendants dispute that she was treated differently from any similarly situated male probationary officer.

■ Plaintiff attempts to show disparate treatment in two ways. First, she contends that she and Maurer were similarly situated. It is undisputed that both Maurer and plaintiff were probationary officers who responded to Ladick's call for help on December 20, 2003, and that both drove past Klementz that night without stopping to assist him or radio for help, assuming that he was not injured. Plaintiff asserts that discrimination may be inferred from the fact that she was terminated for her actions but Maurer was not disciplined in any way for his.

■ To meet her burden of demonstrating that she was "similarly situated" to defendant Maurer, plaintiff must show that Maurer was directly comparable to her in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002); *Spath v. Hayes Wheels International–Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir.2000). Because plaintiff alleges that she was disciplined more harshly than a similarly situated employee, she must show that she and Maurer "dealt with the same supervisor, were subject to the same standards, and [ ] engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly–*

*Clark Corp.*, 219 F.3d 612, 617–618 (7th Cir.2000). The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. *Molloy v. Blanchard*, 115 F.3d 86, 91 (1st Cir.1997) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.")

Although it is true that both plaintiff and Maurer drove past Klementz's squad car on the night of December 20, 2003, without stopping to assist him or radio for help, it is undisputed that when Klementz lost control of his vehicle, plaintiff saw it happen while Maurer did not. Plaintiff avers that she did not see Klementz crash; yet, by her own admission she witnessed Klementz skid off the road, traveling at a moderate rate of speed. Having seen him slide off the road, she did not radio him, call for help or stop her vehicle to check on his condition. Maurer did none of these things either; however, plaintiff has adduced no evidence from which it may be inferred that Maurer had reason to believe that Klementz had skidded, crashed or been injured. In fact, plaintiff concedes outright that Maurer "did not witness any part of Michael Klementz's automobile accident on December 20, 2003, nor did he have any reason to believe that Michael Klementz had been involved in an accident." Dkt. # 36, at 14. That admission is damning.

■ Whether Leck and O'Dell were right to distinguish between plaintiff and Maurer is one question. Whether there was a legitimate factual basis for the distinction that was drawn between Maurer and plaintiff's actions is an entirely different question. "Title VII does not prohibit unfairness or wrongheaded decisions in the workplace," *Johnson v. Hondo, Inc.*, 125 F.3d 408, 415 (7th Cir.1997), and does not

invite the court to "sit as a super-personnel department that reexamines an entity's business decisions," *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988). Plaintiff and Maurer approached and passed the Gingerbread House day care center without the same understanding of the events that caused Klementz's squad car to end up in the location it did. That difference in understanding is enough to distinguish plaintiff's and Maurer's conduct on the night of December 20, 2003, and render them dissimilarly situated.

 Plaintiff's second assertion of disparate treatment is less compelling than her first. Plaintiff contends that male probationary employees were regularly given opportunities to correct perceived deficiencies prior to their termination, while she was not. Specifically, plaintiff asserts that Maurer, Dale Steffes and Robert Geitz were given warnings and opportunities to improve their job performance in lieu of or prior to termination. Again, however, plaintiff has failed to show that these officers' alleged performance deficits were comparable to her own and that she was therefore similarly situated to them. Steffes and Geitz are alleged to have engaged in boorish behavior: intimidating citizens and younger officers, throwing soda bottles, driving recklessly and yelling obscenities on the job. Maurer is alleged to have failed to submit timely proof that he had completed college credits. None of these actions is comparable to plaintiff's alleged deficiency: failing to radio for help or check on an officer whose squad had "spun out" in front of her and whose vehicle she had seen "jump the curb" of the road. Moreover, it is undisputed that Steffes and Geitz were not hired by defendant Leck and that Steffes was ultimately terminated. (Maurer, whose alleged "deficiency" was the failure to timely submit a transcript showing his completed college credits, was given a short extension for submitting the documentation and was not terminated.) Because plaintiff has not adduced evidence from which it may be inferred that she was treated differently from any similarly situated male employee, she has failed to make a *prima facie* case for sex discrimination under either Title VII or § 1983. Consequently, defendants' motion for summary judgment will be granted and judgment will be entered in defendants' favor.

## ORDER

IT IS ORDERED that the motion for summary judgment of defendants Village of McFarland, Gregory Leck and Patrick O'Dell is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.