### Bryan COX, Plaintiff,

v.

### NATIONAL FOOTBALL LEAGUE and Paul Tagliabue, Defendants.

No. 97 C 3741.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 28, 1998.

---

Michael S. Baird, Edward John Manzke,
Stotis & Baird, Chicago, IL, for Plaintiff.

Robert A. Filipi, Paul F. Stack, Stack, Filipi & Kakacek, Chicago, IL, Jeffrey Huvelle, George L. Washington, Jr., Covington & Burling, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff Bryan Cox ("Cox") has sued his employer, the National Football League ("the NFL") and its Commissioner, Paul Tagliabue ("Tagliabue"), for retaliatory employment discrimination under 42 U.S.C. § 2000e et seq. ("Title VII"). The defendants have moved for summary judgment and have moved to strike certain exhibits accompanying plaintiff's response to their summary judgment motion and those portions of the response that refer to such exhibits. For the reasons set forth in below, the Court grants in part and denies in part defendants' motion to strike and grants defendants' motion for summary judgment.

## I. *Facts*

The following facts are undisputed. Plaintiff Cox is a professional football player who has played for, and has been employed by, the Miami Dolphins and the Chicago Bears, two member teams of the NFL. (Defs.' Stmt. Mat'l Facts ("Defs.' 12M Stmt.") ¶ 2.) Defendant NFL is a business enterprise that operates a professional football league. (*Id.* ¶ 1.) Tagliabue is an employee of the NFL and serves as its Commissioner. (*Id.*)

In July 1994, Cox filed a Title VII race discrimination lawsuit against the NFL and Tagliabue. (*Id.* ¶ 44.) Cox sought an injunction to order defendants to institute policies that would prevent players from being subjected to the kind of racial epithets by fans that he was subjected to while entering Rich Stadium in Buffalo, New York for a game on September 23, 1993. (Pl.'s 12N Stmt. Mat'l Facts Requiring Denial Defs.' Mot. Summ. J. ("Pl.'s 12N Stmt.") ¶¶ 1–4.)

Within days after he filed the lawsuit, the NFL ordered Cox to participate in the NFL drug abuse program. (*Id.* ¶ 10.) He was required to undergo drug tests on August 1 and 16, 1994. (*Id.* ¶ 11.) Dr. Trop, who evaluated Cox for possible substance abuse, noted that Cox engaged in heavy drinking in December 1993, but that there was no evidence to support active substance abuse. (Pl.'s Ex. 9, Dr. Trop Letter of 8/26/94.) After September 12, 1994, the NFL did not require Cox to provide urine samples. (*Id.* ¶ 13.) The team physician, Dr. St. Mary, advised Cox to abstain from alcohol during the 1994 season. (*Id.* ¶ 12.) On January 17, 1995, Dr. Brown, the NFL's Medical Advisor, advised Cox that the NFL had adopted a new drug abuse program and that the new program required him to report his whereabouts during the off-season. (*Id.* ¶ 14.) [1]

The NFL maintains disciplinary policies and distributes a memorandum describing the policies annually with a "Message from the Commissioner." (Defs.' 12M Stmt. ¶¶ 4–5.) In a section entitled "Offense Against Game Official," the 1996 disciplinary memorandum, which Cox received, provides that "[p]layers, coaches, and other club personnel must maintain proper respect for game officials at all times" and that "[n]on-physical abuse of officials, including extreme profanity and other abusive language, is ... prohibited." (*Id.* ¶ 6.) In a section entitled "Sportsmanship," the memorandum provides that: "every NFL game is broadcast on radio and television," "[t]he League and its participants are severely criticized whenever obscene or profane language or obscene gestures are carried or shown on the air," and "[s]erious incidents of this kind will warrant disciplinary action by the League." (*Id.* ¶ 7.) Further, the memorandum warns that "[r]epeat violations may entail higher fines, ejection and/or suspension" and that "[i]f appropriate, violations committed in prior seasons will be considered when the level of discipline is established." (*Id.* ¶ 8.)

---

1. In addition, shortly after Cox filed the lawsuit, the NFL Director of Communications released a statement which provided that the NFL has "implemented new security measures for the 1994 season to address [Bryan Cox's] concerns and to supplement previous procedure.... The steps were taken in part because of the incident last season involving Bryan Cox which highlighted the issue of racial harassment of players and coaches by fans." (Defs.' 12M Stmt. ¶ 46.) Cox stipulated to the dismissal of the case without prejudice in February 1995. (*Id.* ¶ 49.)

On October 6, 1996, during a game between the Chicago Bears and Green Bay Packers and after a Packers touchdown, Cox threw his helmet to the ground under the goal post and three officials called a penalty on Cox for unsportsmanlike conduct. (*Id.* ¶ 11.) During the extra point attempt, Cox verbally abused game official Billy Smith by repeatedly shouting obscenities at him in a loud voice, calling him a "motherfucker," and then telling him to "suck my dick." (*Id.* ¶ 12.) Cox made obscene gestures toward Smith by "giving him the finger" several times while standing two to three feet from him. (*Id.* ¶ 13.) Cox's berating of Smith was broadcast live, his display of obscene gestures toward Smith was broadcast on replay by FOX television, and all of his conduct was visible to fans in Soldier Field. (*Id.* ¶ 14.)

Commissioner Tagliabue met with key NFL officials to review the incident and Jerry Seeman, Director of Officiating, Gene Washington, Director of Football Development, and Peter Hadhazy, Director of Football Operations, recommended suspension without pay due to Cox's repugnant treatment of a game official. (*Id.* ¶¶ 19–24.) Tagliabue determined that Cox's conduct represented "a unique set of circumstances" due to Cox's unusual and disturbing loss of control of his emotions, his unprovoked abuse of a game official, his continuing pattern of abuse toward officials as well as fans, and the NFL's past unsuccessful attempts to deter similar misconduct by Cox. (*Id.* ¶¶ 25–27.) Prior to October 1996, Cox had been disciplined for using profanity and making obscene gestures toward officials and fans. (*Id.* ¶¶ 32–39.) Based on the "totality of those circumstances," Tagliabue determined that Cox should be fined in an amount equal to his paycheck for one game, which was approximately $87,000.00. (*Id.* ¶ 28.)

On January 23, 1997, Cox filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") stating that defendants had retaliated against him in violation of Title VII. (*Id.* ¶ 51.) He received a right-to-sue letter from the EEOC on February 26, 1997. (Pl.'s Ex. 5, Compl., Ex. A.) Cox filed the Complaint against the defen-

dants in the instant action on May 21, 1997. (Pl.'s Ex. 5, Compl.)

## II. Motion to Strike Certain Exhibits and Portions of Response Brief

■ Defendants have moved to strike plaintiff's exhibits 2–4, 6, 8–12, 14, 20–22, and 24, plaintiff's video exhibit, and the portions of Cox's brief that refer to such exhibits.

> When . . . a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of his claim, the plaintiff is required by Fed. R.Civ.P. 56, if he wants to ward off the grant of the motion, to present evidence of evidentiary quality—either admissible documents or attested testimony, such as that found in depositions or in affidavits—demonstrating the existence of a genuine issue of material fact. The evidence need not be in admissible form; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in content, in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial.

*Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir.1994) (citations omitted). If a party seeks to offer evidence through exhibits other than depositions, answers to interrogatories, admissions or affidavits, such exhibits "must be identified by affidavit or otherwise made admissible in evidence." *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 137 (7th Cir.1985).

■ First, defendants move to strike Exhibits 2–4, 6, and 8–12, which are documents and correspondence exchanged between defendants and Cox, because none of these documents are supported by an affidavit from a person verifying their origin, truth, or accuracy. Plaintiff has since filed an affidavit by Michael Baird, Cox's attorney, verifying that such exhibits are true and accurate copies. (*See* Pl.'s Resp. Defs.' Mot. Strike, Ex. D, Baird Aff.) Thus, the Court denies defendants' motion to strike Exhibits 2–4, 6, and 8–12.

■ Second, defendants move to strike Exhibit 14, which is a compilation of raw data of fines imposed by the NFL by the National Football League Players Association ("NFLPA") during the years 1994 to 1997, because Cox has failed to properly authenticate the exhibit and has failed to indicate what the statistical summaries are supposed to represent or illustrate. Since the filing of defendants' motion to strike, Cox has provided the affidavit of Tim English, staff counsel to NFLPA, which properly authenticates the compilation as a business record. (*See* Pl.'s Resp. Defs.' Mot. Strike, Ex. F, English Aff.) Defendants' argument that plaintiff has failed to indicate what the statistical summaries are supposed to represent or illustrate goes more toward the appropriate weight the Court should give the evidence, which the Court discusses below, and not whether the evidence is admissible. Thus, defendants' motion to strike Exhibit 14 is denied.

Third, defendants move to strike Exhibits 20–22 and 24, which are various excerpts from books, magazine articles, and newspapers, because such exhibits are not properly authenticated and, even if they could be properly authenticated, they would still be inadmissible hearsay.

■ Exhibit 22 is an article from Sports Illustrated titled "How Zebras Get Their Stripes" and Exhibit 24 is an article from USA Today titled "Remember When Profanity Meant Something?" Because these exhibits are excerpts from a newspaper and a periodical, they are self-authenticating and, thus, require no affidavit for authentication. FED.R.EVID. 902(6). But are they inadmissible hearsay? Cox relies on the Sports Illustrated article for author Rick Lipsey's recounting of a story by NFL referee Norm Schachter about an altercation with Dick Butkus of the Chicago Bears in 1972. (*See* Pl.'s 12N Stmt. ¶ 37.) Exhibit 22 clearly constitutes inadmissible hearsay. Cox relies on Exhibit 24, however, to show that defendants were aware of the contents of the USA Today article, which stated that the "supply of genuinely offensive language has dwindled to nothing" and that profanity serves as a "safety valve," prior to their decision to fine Cox. Therefore, because the statements in Exhibit 24 are being offered to establish the then existing state of mind, *i.e.*, motive, of the defendants, such statements are an exception to the hearsay rule. The Court thus grants defendants' motion to strike Exhibit 22 and denies the motion as to Exhibit 24.

■ Exhibit 20 contains excerpts from a book titled "Sunday Zebras" by Art Holst and Exhibit 21 contains excerpts from a book titled "Impartial Judgment" by Jim Tunney and Glenn Dickey. With regard to Exhibits 20 and 21, Cox failed to submit any pleading, deposition, answer to interrogatories, admissions on file, or affidavit to authenticate these exhibits. These unsworn excerpts from books inappropriately put before the Court material outside the proper scope of Rules 56(c) and 56(e). As the Seventh Circuit stated in *Martz v. Union Labor Life Ins. Co.*, "[t]he facts must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers interrogatories, admissions and affidavits." 757 F.2d at 138. Moreover, even if Exhibits 20 and 21 were properly authenticated, they are not admissible. Cox offers Exhibit 20 and 21 to attack the defendants' position that the type of profanity used together with the obscene gestures displayed by Cox toward official Billy Smith on October 6, 1996 were unprecedented. Although Cox relies on Exhibit 20 to describe an altercation between former NFL referee Art Holst and a player, Dick Modzelewski, such altercation involved no verbal profanity or obscene gestures. (*See* Pl.'s 12N Stmt. ¶ 33.)[2] Therefore, Exhibit 20 is inadmissible based on relevance. Next, Cox relies on Exhibit 21 to establish that former NFL official Jim Tunney understands when players occasionally explode and to describe that Coach George Halas once called him an SOB during a game. Again, the fact that Tunney understands why players occa-

---

2. Cox's factual statement in paragraph 34 of his 12N Statement is not properly supported by Exhibit 20 because page 212 was not included with the exhibit. (*Compare* Pl.'s 12N Stmt. ¶ 34 *with* Pl.'s Ex. 20.) Thus, paragraph 34 cannot be deemed to controvert defendants' 12M Statement.

sionally explode and the fact that Halas once called an official an SOB is immaterial to the Court's determination of whether defendants had a real, legitimate interest in protecting game officials from a player's ongoing pattern of verbal abuse involving profanity and obscenity. Therefore, the Court grants defendants' motion to strike Exhibits 20 and 21.

Fourth, the defendants move to strike the video exhibit submitted with Plaintiff's 12N Statement. The video exhibit contains: (1) excerpts from the NFL film titled "Tough Guys," (2) footage of Herman Moore making physical contact with an official, (3) excerpts regarding Cox on two ESPN shows, (4) footage of Curtis Conway making intentional physical contact with an official and throwing his helmet broadcast on FOX Television, and (5) real-time footage of the play at issue on October 6, 1996 broadcast on FOX Television.

In the Memorandum in Support of Defendants' Motion to Strike, however, defendants limit their argument to the inadmissibility of video excerpts from the NFL film titled "Tough Guys" cited in paragraphs 38 through 42 of Plaintiff's 12N Statement. Thus, the Court limits its review accordingly.

First, defendants argue that excerpts from "Tough Guys" have not been properly authenticated. The Court agrees because Cox failed to submit any pleading, deposition, answer to interrogatories, admission on file, or affidavit to authenticate these video excerpts. These unsworn video excerpts inappropriately put before the Court material not contemplated by Rules 56(c) and 56(e).

Second, defendants argue that even if such excerpts could be properly authenticated, the statements contained in these excerpts are inadmissible hearsay. The statements include: (1) former NFL player Deacon Jones describing former Chicago Bear Dick Butkus' meanness; (2) a commentator describing the playing style and attitude of former Chicago Bear defensive linesman Ed O'Bradovich and former Pittsburgh middle linebacker Jack Lambert; (3) a quote from an interview with O'Bradovich with many "bleeps" to cover his use of profanity; (4) a scene showing Lambert calling an official an "asshole"; and (5) a scene

showing an altercation between former New York Giants linebacker Lawrence Taylor and an official with many of Taylor's words "bleeped" out. Cox argues that these excerpts are admissible under Fed.R.Evid. 801(d)(2)(D) as an admission of an agent of a party. The unanswered question is: an admission as to what? Surely Cox cannot be offering these statements as an admission that profanity or rage exists in the NFL because defendants do not even contend that NFL players have never used profanity or lost their temper during a game. As discussed below, the NFL merely contends that it has a legitimate interest in fining a player who has demonstrated an ongoing pattern of verbal abuse of officials in an amount that will deter such a player from further abuse. The statements contained in the excerpts from "Tough Guys" do not provide an admission to the contrary. Therefore, defendants' motion to strike is granted only as to the excerpts from the film "Tough Guys" contained in the video exhibit submitted with Plaintiff's 12N Statement.

In sum, the Court grants defendants' motion to strike with regard to Exhibits 20–22 and excerpts from "Tough Guys" included in plaintiff's video exhibit. The Court denies defendants' motion to strike with regard to Exhibits 2–4, 6, 8–12, 14, and 24.

### III. *Motion for Summary Judgment*

Federal Rule of Civil Procedure ("Rule") 56(c) allows the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering the evidence submitted by the parties, we do not weigh it or

determine the truth of asserted matters. *Id.,* 477 U.S. at 249, 106 S.Ct. 2505. All facts must be viewed and all reasonable inferences drawn in the light most favorable to the non-moving party. *Transamerica Ins. Co. v. South,* 975 F.2d 321, 327 (7th Cir.1992). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Indiana Bell Tel. Co., Inc.,* 47 F.3d 928, 931 (7th Cir.1995) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

■ First, defendants move for summary judgment as to defendant Tagliabue on the grounds that Title VII does not impose liability on individuals. The Court and plaintiff agree. In *Williams v. Banning,* the Seventh Circuit held that a supervisor sued in his individual capacity is not an "employer" as defined by Title VII. 72 F.3d 552, 553 (7th Cir.1995). Under Title VII, "[t]he term 'employer' is a statutory expression of traditional respondeat superior liability." *Geier v. Medtronic, Inc.,* 99 F.3d 238, 244 (7th Cir.1996). "[A]n employer is liable for a supervisory employee's [discriminatory conduct] ... if the supervisor's acts fell within the scope of his authority or were foreseeable, and the employer failed to take appropriate remedial action." *Banning,* 72 F.3d at 555. Because Cox has sued Tagliabue in his individual capacity and Tagliabue is merely a supervisor, he is not subject to Title VII liability. In addition, because the alleged retaliation, *e.g.,* fining Cox the equivalent of one game check, occurred in the scope of Tagliabue's authority, a remedy is available against the NFL in this action. The Court thus grants defendants' motion for summary judgment as to Tagliabue.

■ Next, defendants move for summary judgment on Cox's Title VII retaliation claim. "The retaliation provision of Title VII forbids an employer to 'discriminate against any individual ... because he has made a charge ... or participated in any manner in an investigation, proceeding, or hearing under' Title VII." *Eiland v.. Trinity Hosp.,* 150 F.3d 747, 753 (7th Cir.1998). To establish a

prima facie case of retaliation, "a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action by the employer; and (3) there is a causal link between the protected expression and the adverse action." *Johnson v. City of Fort Wayne, Ind.,* 91 F.3d 922, 938–39 (7th Cir.1996).

Cox has established the first prong of the prima facie case. It is undisputed that Cox engaged in statutorily protected expression when he filed a Title VII race discrimination suit against defendants on July 26, 1994 in the United States District Court for the Southern District of New York. (Defs.' 12(M) Stmt. ¶ 44.)

With regard to the second prong, the record shows two potential adverse employment actions: (1) the NFL ordered him to participate in a drug abuse program [3] and (2) the NFL fined Cox one game check for unsportsmanlike conduct. The Court addresses each in turn.

■ First, the Court is convinced that Cox is prohibited from obtaining relief on claims regarding the NFL's ordering of drug testing and abstinence from alcohol because such activity occurred outside of the 300–day window. In Illinois, a complainant must file a complaint within 300 days of the occurrence of the event that forms the basis of the Title VII claim. 42 U.S.C. § 2000e–5(e); *Koelsch v. Beltone Elecs. Corp.,* 46 F.3d 705, 707 (7th Cir.1995).

■ Cox filed his EEOC complaint alleging retaliation on January 23, 1997. (Defs.' 12M Stmt. ¶ 51.) The 300–day window thus precludes relief based on events that occurred prior to March 29, 1996. Because the NFL ordered Cox to undergo drug testing from August 1 to September 12, 1994 and ordered him to abstain from alcohol during the 1994 season, such claims are obviously time-barred. (*See* Pl.'s 12(N) Stmt. ¶¶ 11–14.) Moreover, the Court finds that the continuing violation doctrine, a doctrine which

---

**3.** In Plaintiff's Response to Defendants' Motion for Summary Judgment, Cox does not argue that the NFL's ordering him to participate in a drug abuse program constituted an adverse employ-

ment action; he merely argues that the NFL's fine of $87,500.00 satisfies the second element of the *prima facie* case.

the plaintiff does not mention in his response brief, is plainly inapplicable.

Further, the NFL's requiring Cox to report to the Regional Staff to keep the staff informed of his location during the off-season (in the event that the NFL needed to conduct a drug test) does not amount to an adverse employment action. "The alleged adverse employment actions ... must be material." *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.1996). The Seventh Circuit has held that "a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.*

The NFL's requiring Cox to report as to his whereabouts in the off-season did not decrease Cox's salary, diminish his responsibilities, or result in a material loss of benefits. At best, such requirement constituted an inconvenience and, thus, it fails to rise to the level of a material adverse change in the terms and conditions of Cox's employment with the NFL.

Second, Cox argues that the NFL's fine of $87,500.00, or one of Cox's game checks, was an adverse employment action. Because the fine resulted in a significant decrease in Cox's salary, the Court finds that it constitutes an adverse employment action. Thus, Cox has established the second prong of the *prima facie* case with regard to the $87,500.00 fine.

With regard to the third prong, however, Cox has failed to establish a causal link between his Title VII race discrimination suit and the NFL's fining him $87,500.00. "In order to demonstrate a 'causal link,' the plaintiff must demonstrate that the employer would not have taken the adverse action 'but for' the protected expression." *Johnson v.*

*University of Wisc.–Eau Claire*, 70 F.3d 469, 479 (7th Cir.1995) (quoting *Klein v. Trustees of Ind. Univ.*, 766 F.2d 275, 280 (7th Cir. 1985)). "Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity." *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir.1994). "As the temporal distance between ... [the] protected expression and the adverse action increase[s], it is less likely that there is a causal link between the two events." *McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 485 (7th Cir.1996). Further, any "substantial time lapse between the events is counter-evidence of any causal connection." *Johnson*, 70 F.3d at 480.

Cox filed his Title VII discrimination suit against defendants in July 1994 and the NFL imposed the $87,500.00 fine in October 1996. The Seventh Circuit has held that much shorter time lapses fail to establish a causal link. *See, e.g., Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir.1992) (holding that a four-month time lapse between protected conduct and adverse action does not raise an inference of retaliation); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir.1992) (holding that nearly six-month time lapse is too long). Further, in this case, the two-year time lapse is substantial and thus serves as counter-evidence of a causal connection. *See, e.g., Johnson*, 70 F.3d at 480 (stating that a twenty-month lapse between protected expression and adverse employment action was counter-evidence of any causal connection).

Moreover, regardless of the time lapse, Cox has failed to demonstrate that the NFL would not have fined him $87,500.00 but for his filing a discrimination case against defendants in 1994. It is undisputed that during a game between the Chicago Bears and Green Bay Packers on October 6, 1996, after a Packers touchdown, Cox threw his helmet to the ground under the goal post and that three officials called a penalty on Cox for unsportsmanlike conduct. (*Compare* Defs.' 12M Stmt. ¶ 11 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶ 11.)[4] It is also undisputed that dur-

4. Local General Rule 12N requires a party opposing a motion filed pursuant to Fed.R.Civ.P. 56

ing the extra point attempt, Cox verbally abused game official Billy Smith by repeatedly shouting obscenities at him in a loud voice, calling him a "motherfucker," and then telling him to "suck my dick." (*Compare* Defs.' 12M Stmt. ¶ 12 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶ 12.) Cox admits making obscene gestures toward Smith by "giving him the finger" several times while standing two to three feet from him. (*Compare* Defs.' 12M Stmt. ¶ 13 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶ 13.) It is undisputed that Cox's berating of Smith was broadcast live, his display of obscene gestures toward Smith was broadcast on replay by FOX television, and all of his conduct was visible to fans in Soldier Field. (*Compare* Defs.' 12M Stmt. ¶ 14 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶ 12.) Further, it is undisputed that the NFL's 1996 Game–Related Discipline Rules provide that "[n]on-physical abuse of officials, including extreme profanity and other abuse language is prohibited" and players "should be aware that disciplinary action will result from . . . abuse of game officials or fans . . . and public obscenity." (Defs.' Ex. L, NFL's Letter to Cox of 10/10/96 at 2.) Cox admits that "[i]t was appropriate for the League to fine plaintiff for his conduct in the October 6, 1996 game." (*Compare* Defs.' 12M Stmt. ¶ 15 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶ 15.) With regard to the amount of the fine, Cox admits that Commissioner Tagliabue met with key NFL officials to review the incident and that Jerry Seeman, Director of Officiating, Gene Washington, Director of Football Development, and Peter Hadhazy, Director of Football Operations, recommended suspension without pay due to Cox's repugnant treatment of a game official. (*Compare* Defs.' 12M Stmt. ¶¶ 19–24 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶¶ 19–24.) Further, it is undisputed that Tagliabue determined that Cox's conduct represented "a unique set of circumstances" due to Cox's unusual and disturbing loss of control of his emotions, his unprovoked abuse of a game official, his continuing pattern of abuse toward officials as well as fans, and the NFL's past unsuccessful attempts to deter similar misconduct by Cox. (*Compare* Defs.' 12M Stmt. ¶¶ 25–27 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶¶ 25–27.) Cox does not dispute that prior to October 1996, he had been fined for verbally abusing officials and for use of obscene gestures and that the 1996 discipline memorandum provides: "Repeat violations may entail higher fines, ejection, and/or suspension." (*Compare* Defs.' 12M Stmt. ¶¶ 8, 32 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶¶ 8, 32.) Finally, Cox admits that based on the "totality of those circumstances," Tagliabue determined that Cox should be fined in an amount equal to his paycheck for one game, which was approximately $87,000.00. (*Compare* Defs.' 12M Stmt. ¶ 28 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶ 28.)

Having admitted he displayed the behavior as outlined above and that it was appropriate for the NFL to fine him, Cox limits his argument to this: the punishment did not fit the crime. This argument, however, does little to establish "but for" causation and is merely an attempt to establish that the NFL's reasons for the punishment were a pretext for its alleged retaliatory motive.

---

to respond to each numbered paragraph of the movant's 12M statement made by the moving party "including, in the case of disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local General R. 12N(3)(a).

Plaintiff's Response to Defendants' 12M Statement is not a shining example of Local General Rule 12M compliance. As defendants note, Cox responds to some paragraphs twice and omits responses to a few paragraphs. The result is that Cox responds to fifty-two paragraphs where the defendants' 12M Statement contains only fifty-one paragraphs. A court may require strict compliance with Local General Rule 12. *See Maksym v. Loesch,* 937 F.2d 1237, 1240–41 (7th Cir.1991); *Appley v. West,* 929 F.2d 1176, 1179 (7th Cir.1991). Thus, the Court holds that Cox's

12N response means exactly what it states: Cox admits defendants' statement of facts in paragraphs 1–10, 12, 14–31, 33–43, and 45–52. Further, Cox's denial of the statement of facts in paragraph 44 does not comply with Local General Rule 12N because it does not refer to any affidavit, part of the record, or supporting material. Therefore, the fact statements in paragraph 44 cannot be deemed to controvert any statement in paragraph 44 of defendants' 12M Statement. In addition, because paragraphs 9 and 10 of Plaintiff's 12N Statement of Material Facts Requiring Denial of Defendant's Motion for Summary Judgment refer to exhibits which do not support the factual statements contained in those paragraphs, such statements of fact cannot be deemed to controvert any statement in defendants' 12M statement.

Indeed, Cox in his Brief in Response to the Defendants' Motion for Summary Judgment fails to explain how "but for" causation exists in this case and merely skips to a "pretext" argument. Thus, Cox has failed to meet his burden of establishing the third element of the *prima facie* case.

■ Even if Cox could establish a *prima facie* case of retaliation, the Court would still grant the NFL's motion for summary judgment. If a *prima facie* case is established, "the employer must offer a legitimate, non-discriminatory reason for its actions. The burden then shifts back to the plaintiff to demonstrate that the employer's proffered explanation is merely a pretext for retaliation." *Pafford v. Herman*, 148 F.3d 658, 670 (1998). The plaintiff can meet this ultimate burden of persuasion "by showing that a discriminatory reason more likely motivated the employer or that the employer's proffered reason is unworthy of credence." *Perfetti v. First Nat'l Bank of Chicago*, 950 F.2d 449, 450–51 (7th Cir.1991). "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible." *Pignato v. American Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir.1994).

As discussed above, the NFL has stated legitimate, nondiscriminatory reasons for fining Cox the equivalent of one game check. While Cox appears to argue that the NFL's proffered reasons are unworthy of credence, he fails to meet his ultimate burden of persuasion in establishing that the NFL's proffered reasons are a pretext for retaliation.[5]

■ First, Cox's factual statement that the NFL has never imposed a fine against a professional football player or coach for verbally abusing a game official that did not also include physical contact is not supported by plaintiff's Exhibit 14. (*See* Pl.'s 12N Stmt. ¶ 25; Pl.'s Ex. 14.) Exhibit 14 is a collection of raw data of NFL fines imposed on players from 1994 to 1997 only and, thus, it is not a complete historical summary. Moreover, the record is devoid of any explanation of the types of violations, which are far from self-explanatory. For instance, in 1995, the data shows that the NFL fined four players for "Contact with Game Official" and one player for "Fight—Game Official Injured." However, in 1996 and 1997, the data shows the NFL fined players on nine occasions for "Actions Against Officials." It is unclear from the raw data whether the 1996–97 violations for "Actions Against Officials" merely involved verbal profanity against a game official since, unlike the 1995 violations, there is no mention of contact with an official. Moreover, several fines, including Cox's $87,500 fine, are merely described as "Multiple Violations" or "Multiple." Therefore, because the raw data is limited to four years and because the record lacks a competent explanation of the meaning of the raw data, Cox's statement that no player or coach has ever been fined by the NFL for verbally abusing an official is not supported by the record. Thus, Cox's averment cannot be deemed to controvert the Defendants' Rule 12M Statement.

Second, Cox argues that although defendants describe his use of profanity as detrimental to the League, the NFL uses such conduct to promote the NFL's "tough guy" image. Cox's reliance on the NFL film "Tough Guys" to prove pretext is misplaced. As discussed above, the film is inadmissible as an admission of a party opponent because the film admits nothing regarding the NFL's policy and practice of fining NFL players for continued use of profanity and obscene gestures toward officials. Further, Cox's use of profanity was but one of many reasons for imposing the $87,500.00 fine. According to Tagliabue, the NFL fined Cox $87,500.00 because of a unique set of factors: Cox's unusual and disturbing loss of control of his emotions, the unprovoked nature of his abuse of a game official, his continuing pattern of

5. The Court notes that plaintiff's entire argument in response to defendants' motion for summary judgment is one-and-a-half pages long. All one-and-a-half pages are devoted to establishing pretext and the argument is devoid of citations to the record. As the Court discussed in *Green v. Motorola*, Local General Rule 12 "assists district courts by identifying any material fact issues that the parties dispute. But that only happens when parties support their arguments in their memoranda with cites to their Rule 12 statements." No. 96 C 7654, 1998 WL 142356, at *3 (N.D.Ill. Mar. 20, 1998). Plaintiff's lack of citation to any Rule 12 statement "violates the spirit, if not the letter, of Rule 12 and needlessly wastes judicial resources." *Id.*

abuse toward officials as well as fans, and the NFL's past unsuccessful attempts to deter similar misconduct by Cox. Thus, any argument that merely suggests that profanity, in and of itself, is not a valid reason for imposing the $87,500.00 fine does not refute the many other reasons for the NFL's actions.[6]

Third, Cox argues that the defendants' concern about the fans' reaction to profanity and obscenity is a mere pretext for retaliation. Cox opines that defendants' failure to maintain any record of these sorts of complaints means their concern is phony. The record belies this argument because records show that the NFL fined at least two players in 1996 for making obscene gestures and even Cox himself was fined in 1993 for verbally abusing officials with profanity.[7] Further, Cox does not dispute that the NFL has repeatedly communicated to players its policy prohibiting extreme profanity and abusive behavior toward officials. Thus, this argument fails to raise a genuine issue of material fact regarding whether the defendants' proffered reasons were a pretext for retaliation.

Fourth, Cox points to alleged inequities between the fines imposed by the NFL on players for making physical contact with an official and his fine for verbally abusing an official to establish that the NFL's reasons for fining him are a pretext for retaliation. While Cox received an $87,500.00 fine for multiple violations for verbally abusing an official, Oakland Raiders offensive linemen Steve Wisniewski received a $20,000.00 fine for making intentional physical contact with an official on October 17, 1996. In addition, on November 2, 1996, Curtis Conway was fined $10,000.00 for making intentional physi-

cal contact with an official and slamming his helmet on the ground. Cox's argument, however, ignores the fact that his own conduct, albeit verbal and not physical, was part of a continuing pattern of abuse toward officials. Cox does not argue, and the record does not show, that Wisniewski or Conway had been fined previously for multiple incidents of abusing an official.[8] In contrast to Wisniewski and Conway, Cox had been fined in December 1993 for misconduct involving five different incidents of abusing an official by use of profanity and obscenity. (Defs.' 12M Stmt. ¶ 32; Cox Dep. Ex. E, NFL's Letter of 12/14/93.) In addition, Cox had been fined for using profanity and obscenity toward fans. (Defs.' 12M Stmt. ¶ 32; Cox Dep. Ex. E, NFL's Letter of 12/14/93; Cox Dep. Ex. I, NFL's Letter of 12/20/95; Cox Dep. Ex. I, NFL's Letter of 9/26/96.) Moreover, the 1996 discipline memorandum provides that "[r]epeat violations may entail higher fines, ejection, and/or suspension." (*Compare* Defs.' 12M Stmt. ¶¶ 8, 32 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶¶ 8, 32.) Therefore, this argument does not raise a genuine issue as to any material fact regarding whether defendants' interest in protecting game officials from an ongoing pattern of abuse by its players is phony. (*Compare* Defs.' 12M Stmt. ¶¶ 8, 32 *with* Pl.'s Resp. Defs.' 12M Stmt. ¶¶ 8, 32.)

In sum, Cox has failed to establish a *prima facie* case of retaliation and has failed to meet his ultimate burden of persuading the Court that the NFL's proffered reasons for fining him $87,500.00 were a pretext for retaliation. The Court thus grants defendants' motion for summary judgment.

6. The factual statements in Plaintiff's 12N Stmt. of Material Facts Requiring Denial of Defs.' Motion for Summary Judgment that merely raise individual instances of a coach or team member's use of profanity fail to address whether such behavior was part of an ongoing pattern of abuse of game officials or, in some circumstances, whether a fine was imposed at all. (*See* Pl.'s 12N Stmt. ¶¶ 26, 27, 37, 39, 40, 41, 42.) Therefore, these statements fail to controvert the full spectrum of the NFL's proffered reasons for imposing the fine in question.

7. It is interesting to note that defendants imposed this fine on Cox prior to his filing a discrimination suit against defendants.

8. Similarly, factual averments in Plaintiff's 12N Statement of Material Facts Requiring Denial of Defendants' Motion for Summary Judgment regarding Dale Carter of the Kansas City Chiefs, Herman Moore of the Detroit Lions, and Toby Wright of the St. Louis Rams do not forward Cox's cause because the record does not show they were engaged in an ongoing pattern of abuse of game officials. (*See* Pl.'s 12N Stmt. ¶¶ 55–62.)

### Conclusion

For the forgoing reasons, the Court grants defendants' motion to strike with regard to Exhibits 20–22 and excerpts from "Tough Guys" included in plaintiff's video exhibit and denies defendants' motion to strike with regard to Exhibits 2–4, 6, 8–12, 14, and 24. The Court grants defendants' motion for summary judgment. This is a final and appealable order.